WILLIAM F. GRUBER, APPELLANT, V. ERNEST C. STICKELMAN, DOING BUSINESS AS STICKELMAN LIVESTOCK COMMISSION COMPANY, APPELLEE.

31 N. W. 2d 753

Filed April 8, 1948.    No. 32339.

*McKillip, Barth & Blevens,* for appellant.

*W. A. Stewart, Jr.,* and *William S. Padley,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and WESTERMARK, District Judge.

WENKE, J.

Appellant, William F. Gruber, instituted this claim before the Nebraska Workmen's Compensation Court seeking to recover compensation because of injuries allegedly suffered in an accident which he claims happened while he was working for the appellee, Ernest C. Stickelman. Recovery was allowed in the compensation court but upon appeal to the district court for Dawson County it was denied. His motion for new trial having been overruled, appellant brings the cause here for review.

The appeal presents the question of whether or not, based on the evidence produced at the trial, the decision of the district court is correct. This being a workmen's compensation case, under the rule established in the case of Werner v. Nebraska Power Co., *ante* p. 408, 31 N. W. 2d 315, the cause will be considered de novo upon the record.

The record discloses that appellant lives at Gothenburg, Nebraska. For some two or three years prior to October 6, 1945, he had been employed from time to time by the appellee, an auctioneer. Appellee was doing business as the Stickelman Livestock Commission Company of Gothenburg and engaged in the selling of livestock, machinery, et cetera, on a commission basis. For this purpose he held sales about six or seven times a month. Appellee testified that appellant was not a regular employee but that he was hired for a day at a time and if he came back on any sale day and they needed help he would be employed. The record indicates that during these two or three years appellant had been hired and worked at all sales held by the appellee. For working at each sale he received either $6 or $7 per day depending on the length of time that the sale would last. On October 6, 1945, there was a cattle sale and appellant was hired and worked on that day. His work consisted of sorting cattle and writing tickets. His wage for the day was $7.

Under this situation appellant was not a farm or ranch laborer within the provisions of section 48-106, R. S. Supp., 1947, nor a casual employee as limited by section 48-115, R. S. 1943.

Neither was the employment seasonal or dependent upon the weather nor was it continuous as referred to in section 48-126, R. S. 1943.

It was employment within that part of section 48-126, R. S. 1943, which provides: "Wherever in this act the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed

under the contract of hiring in force at the time of the accident, * * *." See, Davis v. Lincoln County, 117 Neb. 148, 219 N. W. 899; Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220; Cole v. M. L. Rawlings Ice Co., 139 Neb. 439, 297 N. W. 652; and Weitz v. Johnson, 143 Neb. 452, 9 N. W. 2d 788.

The accident happened on Saturday, October 6, 1945, while the appellant was engaged with a fellow employee, Homer Trimble, in sorting some 400-pound calves. For this purpose Trimble was using an ordinary rake handle as a prod. While he was so using it one of the animals became excited and kicked. This somehow caused the pole to be swung around and resulted in it hitting the appellant a sharp blow diagonally across his right eye.

The blow bruised the skin where the handle hit and made a slight cut in the eyebrow. It caused some blood to flow which Trimble wiped off with his handkerchief. Appellant testified the blow caused severe pain. He described it as a piercing or tearing pain which resulted in a severe headache. This headache lasted for several days. Appellant continued to work that day and did not report the accident to his employer.

That night, after his work was over, he went to see Dr. Stevenson, who is a general practitioner in Gothenburg. He did not find Dr. Stevenson in his office. However, appellant's wife, who is a practical nurse, was at that time working in the doctor's office. She put merthiolate on the eye and applied cold packs thereto. She continued this same treatment on Sunday. On Monday, October 8, 1945, appellant went to Dr. Stevenson's office and the doctor then examined the eye. He found a bruised condition over the right eye and across the bridge of the nose and on the right cheek just below the eye. There was a slight cut in the eyebrow close to the bridge of the nose. He advised appellant to go home, keep quiet, and continue to apply the cold packs to his eye. He prescribed this treatment to see if the blurred vision and severe pain, of which appellant was

complaining, would clear up. He again examined appellant's eye on Thursday of the same week and, as the vision had not improved, advised continuation of the same treatment, plus vitamin K.

Appellant worked for appellee at sales held on October 13, 18, 20, and 27, 1945. He reported the accident to appellee's son, Ray Stickelman, on either October 13 or 20, 1945. Ray was a foreman at the sales barn and appellant's immediate supervisor. He also reported it to appellee on October 27, 1945. Because of his doctor's advice not to do so, appellant did no work after October 27, 1945, until February 2, 1946. Thereafter he was advised it would be all right to work if he was careful and avoided heavy lifting.

On October 27, 1945, Dr. Stevenson again examined appellant's eye. Because the condition of the eye was getting worse he advised appellant to see a specialist. On October 29, 1945, appellant consulted Dr. Foote of Hastings. Subsequently he also consulted Dr. Harvey of Gothenburg, Drs. Cassity and Judd of Omaha, and Dr. D. D. Sanderson of Lincoln.

Dr. Stevenson testified that when he examined appellant's right eye on October 8, 1945, he found no visible evidence of injury on the exterior of the eyeball but found a hemorrhage in the retina and that the retina did not show up as clear as it should; that there was a blurring or cloudy appearance in the eye; that the vision thereof was disturbed; and that subsequent examinations disclosed this condition to be getting worse. He further testified that from the evidence he found that the blow which struck appellant's right eye was "a good hit" and caused the trouble in his eye.

Dr. D. D. Sanderson, who is an eye specialist, first examined the appellant's right eye in July of 1946. He testified that the loss of sight in this eye was due to an injury to the optic nerve; that the damage was traumatic resulting from pressure on the front of the eyeball rupturing the nerve in the back thereof; and that it

was caused by an accident. Dr. R. H. Rasgorchek, an eye specialist of Omaha, who, in order to testify for appellee, examined appellant's eyes on December 5, 1946, admitted the condition could have been caused by trauma.

The evidence establishes that the appellant is practically blind in his right eye and that he has permanently lost the industrial use thereof. Even Dr. Rasgorchek testified the appellant's vision in his right eye is very poor, being 20/800. He further testified that 20/200 is regarded as industrial blindness. From the evidence in the record we can arrive at no other conclusion than that the appellant has permanently lost the sight in his right eye as a result of the blow received in the accident on October 6, 1945.

In this respect we have not overlooked the testimony of Dr. Rasgorchek that he did not think the visual deficiency was due to trauma but due to corneal astigmatism, which he testified appellant had had since birth. However, the evidence establishes that the appellant, who was 55 years of age at the time of the accident, had never had any trouble with his eyes prior thereto. While it appears that some four or five months before the accident he had purchased glasses at a drug store to enable him to read fine print or writing, however, in all other respects he has always had the full use of his eyes. Both Dr. Stevenson and Dr. Sanderson were of the opinion that the condition of the right eye was not caused by astigmatism. We come to the conclusion that corneal astigmatism was not the cause of the deficiency in the vision of appellant's right eye.

We said in Ames v. Sanitary District, 140 Neb. 879, 2 N. W. 2d 530: "It is to be observed that our statutes nowhere define the characteristics and powers of the normal eye. The obvious intent thereof is to compensate and indemnify the owner of an eye capable of industrial use and injured in industry to the full extent of his industrial loss occasioned thereby." See, also,

Bolen v. Buller, 143 Neb. 237, 9 N. W. 2d 204.

Here the evidence establishes that appellant has lost all practical use of his right eye, having less than one percent of normal visual efficiency, because of the accident and that the condition is permanent and will continue to get worse. Dr. Sanderson testified that he attempted to make a correction but the condition could not be improved, even with powerful lenses, because it would take telescopic lenses and they would not give much benefit. In regard thereto Dr. Rasgorchek testified: "I believe it is possible to correct the vision of *right* right eye, but it is questionable whether or not with such a high refractive error that his right eye has, that it would be possible to correct that vision to match up with the left eye." Thereafter he went on to testify that for all practical purposes the two eyes could not be matched and normal vision established. We do not think the evidence establishes that the appellant's eyes could be restored to their former use.

In any event, in Otoe Food Products Co. v. Cruickshank, 141 Neb. 298, 3 N. W. 2d 452, we said: "In an analysis of section 48-121, Comp. St. 1929 (now section 48-121, R. S. Supp., 1947), we see nothing in the act indicating an intention on the part of the legislature that disability after correction should be the basis for awarding compensation, where there has been an eye injury. If such had been the legislative intent, the act would no doubt have been drafted to so provide. We should not, by construction, put into a law provisions which it does not contain, nor read into it a meaning not intended by the legislature. If the act is faulty, the correction should be made by the legislature and not by the court. We see no more logic in holding that the legislature intended to base disability in an eye case on the condition of the eye after correction than in a leg or arm case where compensation should be awarded on the extent of disability after the attachment of a brace or other appliance. The fact that glasses are

required to restore vision is evidence of the permanency of the injury, and whether artificial means may partially or even wholly restore sight, it nevertheless cannot obliterate the effect of the accident causing the injury."

Section 48-121, R. S. Supp., 1947, effective August 10, 1945, provides, insofar as here material, as follows: "(3) For disability resulting from permanent injury of the following classes, the compensation shall be in addition to the amount paid for temporary disability; Provided, however, the compensation for temporary disability shall cease as soon as the extent of the permanent disability is ascertained, viz: * * * For the loss of an eye, sixty-six and two-thirds per cent of daily wages during one hundred and twenty-five weeks. * * * Compensation under this subdivision shall not be more than eighteen dollars per week, * * *."

From the evidence it appears that appellant was unable to work from October 27, 1945, to February 2, 1946, by reason of his doctor's orders and for that period is entitled to be paid at the rate of $18 per week for temporary total disability. See Poast v. Omaha Merchants Express & Transfer Co., 107 Neb. 516, 186 N. W. 540. The evidence also establishes that appellant lost his right eye within the intent and meaning of section 48-121, R. S. Supp., 1947, and commencing on February 2, 1946, is entitled to be paid $18 per week for 125 weeks because thereof.

Section 48-120, R. S. 1943, provides in part as follows: "The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, * * * not, however, to exceed the regular charge made for such service in similar cases; * * *." The evidence establishes that appellant had expenses of $247.75 in connection with medical services reasonably necessary in treating the injury to his eye and that these are properly chargeable to the appellee.

The judgment of the lower court is therefore re-

versed with directions for it to enter an award in favor of the appellant and against appellee in accordance herewith, that is, for temporary total disability at the rate of $18 per week from October 27, 1945, to February 2, 1946; for the loss of his right eye the sum of $18 per week for 125 weeks commencing February 2, 1946; for expenses had in obtaining reasonable medical services in connection with treating the eye the sum of $247.75; and costs of this proceeding.

REVERSED AND REMANDED WITH DIRECTIONS.