**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Howard R. MURPHY, Appellee.**

**No. 16193.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 3, 1974.

Rehearing Denied Feb. 28, 1974.

Fulbright, Crooker & Jaworski, Russell H. McMains, Thomas P. Sartwelle, Houston, for appellant.

Tom Edwards, Ernest H. Cannon, Houston, Kronzer, Abraham & Watkins, Houston, of counsel, for appellee.

COLEMAN, Chief Justice.

This is a Workmen's Compensation case. The principal issue is whether repeated inhalation of lead and zinc fumes accompanying the burning of galvanized iron over a three day period, which resulted in disability, is an industrial accident compensable under the Act.

The case was tried to a jury, which found that the plaintiff (1) sustained injuries "on or about July 1, 2 and 3, 1970, in the course of his employment," (2) that such injuries were the result of an accident (defined as being an undesigned or unexpected occurrence, traceable to a definite time and place), (3) that such accidental injuries were a producing cause of partial incapacity, (4) which was permanent and (5) began on July 4, 1970. The jury found that the plaintiff's incapacity was not solely caused by preexisting conditions of his body. The trial court entered a judgment for the plaintiff and this appeal resulted. We affirm.

The defendant vigorously asserts that there is no evidence that the plaintiff suffered an "accidental injury" which was the producing cause of partial incapacity. We must review the record to determine whether there is any evidence of probative force raising the issue. We consider only the evidence favorable to the jury verdict.

The plaintiff was the foreman on a job that called for a lot of burning and welding. They were working on galvanized iron. When burning or welding galvanized iron, fumes containing lead and zinc are produced. These fumes have a very light color and are hard to see. If the metal has a very heavy coat of galvanizing, the fumes have an odor, but if the coating is light, there is no discernable odor. As foreman the plaintiff did not do the actual welding, he would go from man to man explaining what he wanted done. He might be with each man from five to ten minutes. The welding was being performed outside, but there was no wind. There was testimony that the "smoke off the galvanizing" sometimes gives one an "unusual reaction" and that it is "the kind of thing that can slip up on a person." Breathing the fumes makes one sick at his stomach. Milk is kept on the job for use as an antidote. It may cause fever and aching bones.

Mr. Hancock, a welder on this job, testified that he had been an iron worker for fourteen years and that he had gotten sick from the fumes two or three times. He said that you couldn't smell the fumes, but that "you can taste it sometimes in your mouth. After you have done it three or four hours you will know you have been doing it."

The plaintiff testified that while he was working on July 1, 1970, he breathed some of the fumes and it made him sick. About ten o'clock he became sicker and drank some milk, which he vomited. He was sick at his stomach the rest of the day and couldn't eat his lunch, supper, or breakfast the next morning. He got "some more of it, pretty bad, around eleven o'clock" the next morning. He vomited off and on. "The next morning, the same thing." He was unable to retain food from Wednesday morning to the following Sunday, when he was in the hospital. He did not know he had gotten into the fumes before he got sick. It was unexpected. He had gotten a slight touch one time about a month before. He had been an iron worker for thirty years. There were nine men working in the crew. One other man got sick. He told the men he was sick, and reported it to his superintendent.

Prior to July 1, 1970, he had no problem doing his job. He had no problem with shortness of breath. When he got out of the hospital he went back to work, but he was not able to do the work. He has had problems with shortness of breath from that time, and it is getting worse. It never got better, and it started after he breathed those fumes. The plaintiff's testimony was corroborated in many details by the testimony of two of the men working with him at the time.

In 1968 and on one other occasion he had been troubled with shortness of breath. On those occasions he was treated with medications and his trouble with shortness of breath went away. He was told that he had a mild case of emphysema. After he was released by his doctor he continued to work under difficulty for several months. Finally he retired at age fifty-seven because he "could not perform the work any more from my shortness of breath."

Dr. Leonard R. Robbins, a specialist in internal medicine, was called as a witness by the plaintiff. He first examined the plaintiff on May 31, 1972. He found that plaintiff had chronic emphysema and bronchitis of long standing. In answer to a hypothetical question he testified that these conditions were aggravated by the fumes he inhaled on July 1, 2 and 3, 1970, and the resulting chemical pneumonia. Pneumonia is a reaction on the part of the lungs to some agent that causes the lungs to become inflamed. This results in the lungs becoming filled with cells fighting the agent causing the inflammation. A healing process ensues resulting in some scarring. Pneumonia normally is caused by bacteria, but chemicals can cause the inflammation and set up a similar reaction on the part of the body to a foreign substance. The condition of chronic emphysema and bronchitis was made worse by breathing in the chemicals and the resulting pneumonia. The condition of his lungs could be disabling and is not solely caused by emphysema. Emphysema is a condition in which there is a loss of the effectiveness of the space in the lungs. The lungs are made up of small air sacs, each one enabling the blood to take up oxygen and give up carbon dioxide. The process of emphysema is the destruction of the sacs. The holes that separate them become larger and as a result air gets in and out less efficiently. The air has less opportunity to come in contact with the blood. Chronic bronchitis damages the bronchi or air passages that lead to the sacs. If the bronchi become scarred, they become less effective. They become narrow and the muscles surrounding them become tight and restrict the amount of air flow. The normal function of the bronchi is to bring air into the lungs and to get out secretion. This function is impaired by scarring. Chemical pneumonia, leaving a residual scarring impairs the lungs to some extent. In a person having emphysema and bronchitis, this impairment and resultant loss of function in the lungs is much more significant than in a person having normal lungs. Mr. Murphy's exposure to the lead and zinc fumes on the occasion in question was a producing cause of the condition he diagnosed. It is his opinion that Mr. Murphy is unable to perform the usual tasks of a workman. Based on the history, and the fact that he was able to work prior to July, 1970, in spite of his emphysema, he would assume that the disability occurred in July, 1970, or several months thereafter. The condition is permanent. He considered the lung condition disabling without regard to Mr. Murphy's other trouble. Murphy's episodes of heart racing and sweating can be explained by pulmonary insufficiency.

The doctor further testified that classic lead poisoning manifests itself in the liver and would weaken one very gradually. In this case we are talking about a case where there is acute irritation, bronchitis and emphysema because of the inhaling of fumes. Chronic lead poisoning was not present. He diagnosed Murphy's condition as resulting from the irritating effects of the fumes that aggravated his lung condition, and not as resulting from the absorption of the metallic fumes in the body.

While the Workmen's Compensation Act does not use the word "accident" in relation to compensable injuries, it has long been settled that a disability, except in occupational disease cases, must result from an "undesigned, untoward event traceable to a definite time, place and cause." Olson v. Hartford Accident & Indemnity Company, 477 S.W.2d 859 (Tex. 1972). The inhalation of substances can constitute an accidental injury within the meaning of the Workmen's Compensation Act if such inhalation is traceable to a definite time and place and results in damage or harm to the physical structure of the body. Texas Employer's Insurance Association v. Wade, 197 S.W.2d 203 (Tex. Civ.App.—Galveston 1946, writ ref. n. r. e.); Consolidated Underwriters v. Wright, 408 S.W.2d 140 (Tex.Civ.App.—Houston 1966, writ ref. n. r. e.); Texas Employer's Insurance Association v. Robison, 241 S.W.2d 339 (Tex.Civ.App.—Dallas 1951, writ ref. n. r. e.); Texas Employers' Insurance Association v. Jimenez, 267 S.W. 752 (Tex.Civ.App.—San Antonio 1924, writ dism'd). It is not required that the injury in the course of employment be the sole cause of the resulting disability. A predisposing bodily infirmity will not preclude compensation. Baird v. Texas Employers' Insurance Association, 495 S.W.2d 207 (Tex.1973).

There is evidence that the plaintiff inhaled fumes containing lead and zinc at intervals during a three day period, which resulted in hospitalization for pneumonia. There is medical testimony that the pneumonia was caused by inhaling the fumes, and that the pneumonia caused damage or harm to plaintiff's lungs. There is medical testimony that this damage to the lung aggravated his preexisting chronic emphysema and bronchitis resulting in permanent disability. While the evidence shows that the gas was inhaled over a three day period, and it cannot be determined whether the pneumonia resulted from one final whiff of the fumes, or from the cumulative effect of the repeated inhalations, the damage to the plaintiff's body was caused by "an undesigned, untoward event traceable to a definite time, place, and cause." Olson v. Hartford Accident & Indemnity Company, supra; Barron v. Texas Employers' Insurance Association, 36 S.W.2d 464 (Tex.Com.App.1931); Hartford Accident & Indemnity Co. v. Contreras, 498 S.W.2d 419 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref. n. r. e.); Travelers Insurance Co. v. Fagan, 366 S.W.2d 885 (Tex.Civ.App.—Texarkana 1963, writ ref. n. r. e.); Texas Employers' Insurance Association v. Cross, 358 S.W.2d 156 (Tex. Civ.App.—San Antonio 1962, writ ref. n. r. e.).

The event, chemical pneumonia was untoward and unexpected. It was traced to a definite place and cause. We consider the time, a period of three days, sufficiently definite. While the fumes could be expected from the process of welding galvanized iron, the usual effects of breathing the fumes apparently were not considered serious. One witness had gotten sick two or three times in fourteen years and plaintiff had gotten sick once before in twenty years. A witness testified that you could tell you were breathing the fumes after working on galvanized metal for three or four hours. There were nine men working on the material in the same area on a still day. The plaintiff visited with each of them. Apparently only one other man sick. While the fumes constituted a known hazard, it does not appear that it was expected that a man working on the job would necessarily suffer an injury.

The Supreme Court of Texas has been liberal in construing the words "accidental" and "injury" in cases involving heart attacks and strokes and in finding evidence of a particular strain, over-exertion or shock which caused the incapacity. Tyra v. Woodson, 495 S.W.2d 211 (Tex.1973). Here we have the prompt onset of chemical pneumonia following an occurrence competent to adversely affect defective lungs, and the circumstances were such that it was reasonable to believe that the

plaintiff's job related activities on July 1, 2 and 3 precipitated physical failure. Evidence warranting similar findings was held to be sufficient in Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex.1969).

The evidence is sufficient to sustain the jury finding that the plaintiff worked 210 days in the year immediately preceding his injury. This finding is supported by the plaintiff's testimony that he did work at least 210 days during that period and that he did not average being off work as many as two days a week during that year. The fact that he did not remember the exact number of days he worked does not destroy the probative value of his other testimony.

During the cross-examination of Dr. Robbins he was asked whether he knew James Kronzer, a partner in the firm representing the plaintiff. After an objection was sustained to the question, the jury was retired and the witness questioned on a Bill of Exceptions. It was developed that Dr. Robbins as a member of the Houston School Board had voted to retain Mr. Kronzer and his firm as special attorneys for the school board, and that on one occasion he had attended a large party given by Mr. Kronzer. This testimony was offered. As a qualification to the bill it was developed that Mr. Kronzer was employed by the school board to handle matters dealing with segregation of races in the public school system, and that Mr. Kronzer's involvement in this matter was publicized in the newspapers. The trial court then permitted the doctor to answer only that he knew Mr. Kronzer professionally and personally. The trial court did not abuse his discretion in so ruling. The likelihood of prejudice to plaintiff's case by reason of this extraneous circumstance counterbalanced the probative value of the testimony. Texas Employers' Insurance Association v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954); McCarty v. Gappelberg, 273 S.W.2d 943 (Tex.Civ.App.—Ft.

Worth 1954, writ ref. n. r. e.); McCormick & Ray, Texas Law of Evidence (1956), § 679.

Affirmed.