**Alvin Michael CEARLEY, Appellant,**

v.

**ROYAL GLOBE INSURANCE CO., Appellee.**

No. 2–81–009–CV.

Court of Appeals of Texas, Fort Worth.

May 6, 1982.

Rehearing Denied June 3, 1982.

Foster, Frederick & Hubby and Michael E. Frederick, Arlington, for appellant.

Simon, Peebles, Haskell, Gardner & Betty and Anne Gardner, Fort Worth, for appellee.

Before MASSEY, C. J., and SPURLOCK and JORDAN, JJ.

## OPINION

JORDAN, Justice.

Appeal from a Worker's Compensation case filed by appellant seeking compensation benefits for a compensable injury received in the course and scope of his employment at General Motors Corporation on or about January 5, 1977. The case was submitted to a jury which found that he had received an injury on or about January 5, 1977, while in the scope and course of his employment, which injury was the producing cause of only about 14 days of total incapacity but that the injury was the producing cause of partial incapacity for a period of January 20, 1977 to January 20, 1980.

On motion of appellee, the trial court granted appellee's motion for judgment *non obstante veredicto* on the ground that there was no evidence to support the answers of the jury to Special Issue No. 1, finding that on or about January 5, 1977 appellant received an injury, and to Special Issue No. 2, finding that such injury was received in the course of his employment.

On appeal, appellant simply insists that the trial court erred in finding that there was no evidence to support the answers of the jury to these two issues and that the granting of the judgment *non obstante veredicto* was improper.

We affirm.

A judgment *non obstante veredicto* may be upheld on appeal only where a directed verdict would have been proper. *Pilot Life Ins. Co. v. Koch*, 617 S.W.2d 786 (Tex.Civ.App.1981, ref. n. r. e.). The trial court cannot disregard any special jury findings unless there is no support in the evidence. As to whether or not the evidence supports the jury's findings the appellate court must determine that there is no evidence of probative value upon which the jury could have made the findings adverse to appellee. *Villarreal v. Boggus Motor Co.*, 471 S.W.2d 615 (Tex.Civ.App.—Corpus Christi, 1971, ref. n. r. e.); *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962). In applying this test we must consider only the testimony which tends to support the jury's issues and disregard all evidence contrary thereto. *LeMaster v. Fort Worth Transit Co.*, 138 Tex. 512, 160 S.W.2d 224 (1942).

After reviewing this entire record, and considering, as we must, only that testimony favorable to the jury's findings, we

have concluded that there simply is no testimony in this case that appellant received, on or about January 5, 1977, a compensable injury in the course of his employment at General Motors. If this testimony supports any kind of compensable injury under the Worker's Compensation Act it is for an occupational disease, not an accidental injury, an undesigned, untoward event traceable to a definite time, place and cause.

In his original petition, which is the pleading he went to trial on, appellant alleged "serious, painful, and permanent personal injuries as a result of his employment on or about January 5, 1977." More specifically, in paragraph VI of his petition, he alleged: "The injuries which Plaintiff received and the manner in which he received them may be described as follows: While in the course and scope of my employment with General Motors Corporation I was exposed to fumes, gases, and such conditions which has resulted in injury and damage to my respiratory system. Plaintiff has received serious injury to his respiratory system and, is therefore, totally disabled. This disability will be permanent."

Briefly stated, the evidence shows that appellant worked at General Motors from December 15, 1965 until January 5, 1977, when he sustained his alleged injury. He had worked in the chassis department at General Motors, and had worked on the "final line in that department for four years prior to his alleged injury on January 5, 1977." He testified that the final line is the "final dress-up of the car before it goes to have the trim put in." His job was to take the car after it was finally assembled, put gas in it, and start it up to make sure it would run before they got to the end of the line where they were driven off. He checked the lights and the cruise control and started the car. He further testified that in this job he encountered a lot of gas and exhaust fumes, as well as paint smell, since the cars were just freshly painted.

With respect to the "injury" on January 5, 1977, appellant testified as follows:

Q. Did you notice you began to have trouble with your body after you had been working there.

A. Yes.

Q. And what part of your body did you begin to have trouble with.

A. I had trouble breathing. My breathing would tighten up.

Q. Tell the jury what you mean when you say tighten up.

A. My nose would stop up completely. I had to breathe through my mouth. It would get to where I was wheezing. I would tire easily from lack of oxygen. My heart would race. My neck would tighten up and after 4 hours, I would get one of those headaches that last a week or so.

Q. Had you ever had anything like this happen to you before?

A. No.

Q. Now, did this begin—did it happen all of a sudden, or did it develop over a period of time?

A. *Well, it developed over a long period of time.* (Emphasis ours.)

At this juncture counsel for appellee objected on the ground that the pleading set out specific dates, specific events, and that there were no allegations of an occupational disease or some repetitious activity over a period of time. This objection was sustained, and then, for the first time, in response to a direct question from his attorney, appellant said he began having trouble with these symptoms about January 5, 1977. That was the last day he actually worked at General Motors.

This was the extent of the testimony as to what happened on January 5, 1977. There was no testimony from any witness as to problems or any trouble that appellant was having on January 5, 1977 that he was not also having on any other day on the "final line" during the four years he worked there. There was not one line of testimony that there was any unusual or excessive, or unusual smell of oil, gasoline, exhaust or paint fumes on January 5, or that they were even any worse on that day than they had been on any other day he worked there. There was no testimony of any blast of fumes, or explosion, or anything out of the ordinary that happened that day.

Two medical witnesses testified in appellant's behalf. Dr. Bobby Smith, an osteopathic family physician and general practictioner, testified, over repeated objections, after being read the accepted definition of "injury" under the compensation law, with the reference in the definition to occupational disease omitted after objection to it was sustained by the court. Dr. Smith said that the inhalation of "petrochemicals" by Appellant on January 5, 1977 constituted an injury and was a producing cause of the medical problems for which he treated appellant. Dr. Smith conducted no tests on appellant and he identified no petrochemicals or other substance at the plant which appellant might have inhaled on January 5, 1977. Neither did he relate any underlying facts, or any unusual occurrence on that particular date to support his opinion. The tests Dr. Smith referred to in his testimony were those made by Steven Cordas, an osteopathic allergist, immunologist and internal medicine specialist, who testified by deposition. Dr. Cordas did several tests on appellant and testified that in his opinion "that there is probably a good relationship between exposure to petroleum products and an *aggravation of his symptoms.* That's all I can really make a judgment on, based on the testing that I did at the time and the brief observations over two visits."

On cross-examination Dr. Cordas testified that he could not say with reasonable medical certainty that appellant was exposed to more petroleum based products at the General Motors Plant than he was when he later worked in his own wrecking and salvage yard in Troup, Texas. He also stated that he could not say with reasonable medical certainty that appellant had less exposure to petroleum based products at his wreckage and salvage yard than at the General Motors Plant. He further admitted that he did not know of his own personal knowledge what amount of exposure to petroleum based products or chemicals, if any, that appellant had at the General Motors Plant. He also admitted that it would be mere speculation on his part as to whether General Motors was a cause of the condition or conditions that he said he found or whether appellant's wrecking and salvage

yard was the cause of his complaints and conditions. He could not say that appellant was exposed to any chemical at General Motors to which his tests showed a reaction. When asked on cross-examination if he had an opinion, based upon reasonable medical probability, as to whether or not the inhalation of petrochemicals which appellant received on or about January 5, 1977 was a producing cause of the medical problems for which he had treated him, he said: "The answer is no, I don't have an opinion."

We do not think the testimony above referred to in some detail is any evidence of an accidental injury, which has been defined as an undesigned, untoward event traceable to a definite time, place and cause, sustained by appellant at General Motors on January 5, 1977.

Appellant did not plead occupational disease in his original petition or at any other time. Nor did he plead aggravation of a pre-existing injury, as shown by our previous reference to appellant's original petition. He pled that on January 5, 1977 he received a definite, identifiable accidental injury when he inhaled fumes and gases. Nothing was said about aggravation. Yet, in his brief filed with this court on appeal, long after trial, he says: "Appellant contends that the evidence presented at the trial in this case proves that appellant suffered from a previously existing condition diagnosed as petroleum sensitivity which was provoked and aggravated by his inhalation of fumes and petroleum distillate at his work place on January 5, 1977 . . . It is *not* appellant's position that this infirmity was either caused by his employment or became implanted on January 5, 1977." (Emphasis appellant's.) This was not his position in his petition or during trial and was taken only on appeal after the two medical witnesses testified.

Regardless, however, of the switch in positions of appellant during and after trial, we do not think there is any evidence of any probative force of an injury sustained by appellant on January 5, 1977, whether it aggravated a prior condition or not. It is our opinion that if this evidence, and we have read the entire record, shows anything it is an occupational disease, which theory

was not espoused by appellant either in his pleadings or on trial.

■ The evidence in this case does not meet the test of a compensable injury as defined by the courts. *See Olson v. Hartford Accident and Indemnity Company*, 477 S.W.2d 859 (Tex.1972), where it was said: "For there to be an accidental injury, or an industrial accident, there must be an undesigned, untoward event traceable to a definite time, place, and cause ... As above noted, this court has been liberal in construing both the word 'accidental' and the word 'injury' in cases involving heart attacks, strokes and traumatic neurosis cases, and in holding that there was some evidence of a particular strain, overexertion or shock which caused the incapacity. But, except in the case of the occupational diseases designated by the Legislature, it has adhered to the requirement that there be an accidental injury traceable to a definite time, place, and cause ..." *See also Solomon v. Massachusetts Bonding and Insurance Company*, 347 S.W.2d 17 (Tex.Civ.App.—San Antonio 1961, writ ref.).

■ Inhalation of substances may constitute an accidental injury within the meaning of the Compensation Act, if the inhalation is traceable to a definite time and place. *See Texas Employers' Insurance Association v. Murphy*, 506 S.W.2d 312 (Tex.Civ.App.—Houston 1974, no writ) where it was held that evidence of inhalation of certain fumes over a defined and designated three day period was sufficient to establish that the claimant had suffered a compensable injury because it was traceable to a definite time and place. The court there said: "The inhalation of substances can constitute an accidental injury within the meaning of the Workmen's Compensation Act if such inhalation is traceable to a definite time and place and results in damage or harm to the physical structure of the body."

In *Hartford Accident and Indemnity Co. v. McFarland*, 433 S.W.2d 534 (Tex.Civ.App.—Tyler 1968, writ ref. n. r. e.), a case with a fact situation very similar to this case, the court distinguished between occupational diseases, quoting from *Frazier v. Employers*

*Mutual Casualty Company*, 368 S.W.2d 955 (Tex.Civ.App.—Austin 1963, writ ref. n. r. e.) as follows:

"An industrial accident or accidental injury is distinguished from an occupational disease by the following characteristics: An industrial accident or accidental injury can always be traced to a definite time, place and cause, whereas an industrial disease is of slow and gradual development, and the time, place and cause thereof are not susceptible of definite ascertainment."

In *Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334 (Tex.1979), where the question involved was whether a repetitious mental traumatic activity, as distinguished from a physical activity, may constitute an occupational disease, the court, through Justice Pope, said in part "[w]e conclude that the settled law that had developed under the first sentence is also intact. The law was that an injury is defined and understood as one that is an undesigned, untoward event that is traceable to a definite time, place and cause. In other words, it is the result of an accident."

We hold, therefore, that there was no evidence that appellant, on January 5, 1977, sustained a compensable, accidental injury, and that the trial court, in granting a judgment *non obstante veredicto*, was correct.

The judgment is affirmed.