KENNETH C. SCOTT, APPELLANT, V. STATE OF NEBRASKA,
BEATRICE STATE HOME, APPELLEE.

352 N.W.2d 890

Filed August 3, 1984.   No. 83-544.

Stephen A. Brunette of Brunette & Otley, for appellant.

Paul L. Douglas, Attorney General, and John R. Thompson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is a workmen's compensation action in which the claimant, Kenneth C. Scott, seeks to recover benefits for a psychiatric injury arising out of and in the course of his employment by the State of Nebraska at the Beatrice State Home (now Beatrice State Developmental Center) in Beatrice, Nebraska. On rehearing, a three-judge Workmen's Compensation Court panel affirmed the single judge's dismissal of claimant's petition, finding that Scott's disability was the result of a normal progression of a preexisting condition. Scott appeals, assigning two errors: (1) That the panel erred in that its findings of fact and order are not supported by the evidence; and (2) That the panel erred in the application of workmen's compensation law pertaining to psychiatric disability. For the reasons hereinafter set out we affirm.

The case, as decided by the compensation court panel, and as

appealed to this court, presents a narrow issue, to wit, Did the evidence support the panel's finding that plaintiff's injury was the normal progression of a preexisting condition, or did that evidence require that the panel find that plaintiff had suffered an occupational disease arising out of and in the course of his employment? For the purposes of its decision the panel, in its order dismissing Scott's petition, stated:

We will assume for the purposes of this decision that the plaintiff has been under a disability so as to toll the Statute of Limitations. We will also assume that plaintiff's medical proof, even though there is no proof of physical trauma, is adequate to make a fact question as to whether the plaintiff suffered an injury or occupational disease (48-151 (3) (4)).

We observe the same limitations, and specifically do not determine whether the statute of limitations has been tolled, nor do we determine whether Scott has stated a cause of action under our workmen's compensation statutes, where he alleges that he suffered a mental injury without suffering any physical trauma. We will not, therefore, address the second of Scott's assigned errors.

The record shows that Scott was employed by the State of Nebraska as a laundry handler at the Beatrice State Home from August 1969 to January 1973. His duties were to pick up laundry from all the buildings on the grounds in a laundry wagon, deliver it, and return it after cleaning. He supervised other employees and some residents who helped perform this work. His performance reports, compiled by his supervisors, during the time from August 1969 through February 1973 indicated generally superior performance of his job.

In a letter dated December 20, 1972, Scott wrote to his immediate supervisor, complaining that a laundry coworker was verbally abusing and exhibiting "aggressive behavior" toward residents who were assisting with the laundry duties. When he felt nothing was being done about the alleged abuses of the residents, Scott complained to the business manager in charge of the laundry. He next complained of physical abuse to residents by writing the director of the Department of Public Institutions on December 31, 1972. Scott met with the director

in January and May of 1973.

In January 1973 Scott was transferred by the business manager to the warehouse. Scott maintains the move was a result of his complaints to the director. Scott testified that fellow workers were angry and harassed him because he had gone to the persons in charge of the Beatrice State Home with his complaints. He requested a transfer out of the warehouse due to the stress of the harassment he was receiving. In September of 1973 he became a security guard at the home and worked as such until May 3, 1974. Scott testified that on that date he was in the basement garage of the administration building cleaning out automobiles when he began "hearing voices." The voices were making derogatory remarks, and stated that the superintendent was going to fire Scott for being a "stool pigeon." Scott testified he continued to hear the voices for approximately 5 hours at work and later on when he was at home. He then saw a physician in Beatrice, who advised Scott to seek psychiatric care. He has not worked since.

The record further shows that Scott had had some indications of mental illness since 1968. Scott testified he had some mental problems while in the service, which he described as anxiety and a "nerve problem." He was discharged from the armed services in 1968 and given a 100-percent, nonservice-connected disability. On June 26, 1969, Scott had a 1-day admission at the VA medical center in Lincoln, Nebraska, and was diagnosed as a schizoid personality with systematic alcoholism. He continued to receive disability benefits until 1971, when he was reevaluated and the disability rating was removed. On May 23, 1974, Scott entered the VA hospital in Lincoln and has since been under the psychiatric care of Dr. Fay Whitla. In July of 1974 Scott's 100-percent disability rating was restored, and he has continued to receive it to the date of the hearing herein. Dr. Whitla diagnosed Scott as a paranoid personality, and treated him for anxiety and depression. He was discharged July 12, 1974, and has been seeing Dr. Whitla on an outpatient basis since.

Scott has not worked since May 3, 1974, and resigned from the home in a letter dated April 14, 1975. Since June 1976 to the present, Dr. Whitla has diagnosed Scott's condition as

"schizophrenia, paranoid type."

In reviewing the decision we must keep in mind that the findings of fact by the compensation court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. The decision after rehearing must be considered in the light most favorable to the successful party, and every controverted fact must be decided in its favor. *Moore v. The Sisk Co.*, 216 Neb. 451, 343 N.W.2d 767 (1984); *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983).

The record shows that the claimant saw a Dr. Wilson in 1969, when he was diagnosed a schizoid personality with systematic alcoholism. Dr. Wilson died many years before the hearings. Dr. Whitla provided the only medical testimony. His initial contact with Scott was in 1974. Dr. Whitla was questioned regarding causation of claimant's mental illness in May 1974, and the following exchanges occurred during Dr. Whitla's testimony:

> Q. At the time of his 1974 hospitalization, Doctor, do you have have any opinion as to whether the diagnosis made of him in 1969 had carried over to some extent; or do you have any opinion as to whether Mr. Scott had any psychiatric disability or psychiatric condition at the time that he came into the facility or while he was working at the Beatrice State Developmental Center based on what you have available in the records and your own personal and professional knowledge of Mr. Scott?
>
> A. Do I feel that he had — that — if the diagnosis in '69 was correct, you're saying, could it carry over. Yes, it could because Dr. Wilson's a very competent person. However, he only saw him for one day or less than a day. And he — personality disorder is a lifelong problem. It's a mental adapted pattern of behavior, so that would carry over.
>
> Q. There may have been — I'm wondering whether you have an opinion as whether there was a preexisting condition in Mr. Scott?
>
> A. It appears that there was, yes.

This testimony, when considered with Scott's own statements and other evidence, seems to establish, without dispute, that

Scott did have a preexisting psychiatric condition before his employment with defendant.

With regard to the question of the aggravation of that preexisting condition:

> MR. BUNDY: Do you have any personal knowledge of whether, in fact, it did aggravate his condition?

> THE WITNESS [Dr. Whitla]: I don't know if anybody can prove it, but he continued to mention that it did. It was a stressful area that we discussed frequently. And I have to go by what he brings up and what things he shows more anxiety about when he's discussing.

> MR. BUNDY: You didn't see Mr. Scott previous to 1974, though, did you?

> THE WITNESS: Not to my knowledge.

> MR. BUNDY: So you really have no knowledge of what happened to him between 1969 and 1974, do you?

> THE WITNESS: No, sir.

At other times in his testimony Dr. Whitla stated that the events at the Beatrice State Home "would aggravate" Scott's condition, or "could aggravate" Scott's condition. Dr. Whitla further testified that Scott's condition in 1983 was generally the same as in 1974 but that Scott in 1983 was "a bit more aggravated, upset, under more stress now." The testimony could mean only that plaintiff's psychiatric condition has continued to deteriorate and that plaintiff's condition continues to be a normal progression of his preexisting condition.

The burden of proof is on the plaintiff to show an occupational disease arising out of and in the course of his employment and the disability resulting therefrom. The plaintiff must show a causal connection between his employment and the alleged disability. *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983). It is true that Scott never returned to work after May 1974, when he was diagnosed for the second time as suffering a mental illness. However, the doctor's testimony upon the issue of causation and the presence of a preexisting condition was such as to allow the three-judge panel to determine the claimant had not met his burden of proof. In a case such as this the burden of proof is upon the plaintiff to show by a preponderance of the evidence

that the disability sustained is the result of an occupational disease arising out of and in the course of his employment, and was not the result of the normal progression of a preexisting condition. *Negrete v. Western Electric Co., Inc.*, 212 Neb. 876, 326 N.W.2d 681 (1982). Moreover, the presence of a preexisting disease or condition enhances the degree of proof required to establish that the occupational disease or injury arose out of the employment. *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981). The testimony with regard to causation must be definite and certain to warrant a compensation award. *Randall v. Safeway Stores*, 215 Neb. 877, 341 N.W.2d 345 (1983).

We recognize, as stated in *Halbert v. Champion International*, 215 Neb. 200, 204, 337 N.W.2d 764, 766 (1983), quoting from the syllabus of the court in *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981), " 'Although it is frequently stated that medical testimony must be given with "reasonable medical certainty" it is sufficient when such testimony is stated in terms of "probability." In this connection, "reasonable certainty" and "reasonable probability" are one and the same thing.' "

The three-judge panel assumed "that plaintiff's medical proof . . . is adequate to make a fact question as to whether the plaintiff suffered an injury or occupational disease . . . ." The three-judge panel simply held that plaintiff, while he presented a fact question, did not sustain his burden of proof. We agree. The testimony of Scott's doctor was equivocal and, when considered together with the undisputed evidence as to plaintiff's psychiatric background, did not require that the fact finder determine the question of causation in plaintiff's favor. We have long held that the opinion of an expert witness is not binding on the trier of fact. *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983).

There was no error in the panel's determination, and the order dismissing plaintiff's petition should be affirmed.

AFFIRMED.