JOANNE HAYES, APPELLEE, V. A.M. COHRON, INC., APPELLANT.

400 N.W.2d 244

Filed January 23, 1987.    No. 86-197.

James J. DeMars of Barlow, Johnson, DeMars & Flodman, for appellant.

Robert R. Moodie of Friedman Law Offices, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The appellee employee, Joanne Hayes, alleged she sustained personal injury in an accident arising out of and in the course of her employment with the appellant employer, A.M. Cohron, Inc., when she felt a sudden, sharp pain in her knee while "lifting a 200 pound I-beam with a co-worker." The compensation court found Hayes suffered accidental injury to her right leg arising out of and in the course of her employment with Cohron by virtue of being "frequently required to work on her knees," and awarded her certain benefits under the provisions of Neb. Rev. Stat. §§ 48-120 (Reissue 1984) and 48-121 (Cum. Supp. 1986). Cohron appeals and assigns as errors the compensation court's (1) finding that Hayes suffered an injury arising out of and in the course of her employment, (2)

finding the evidence sufficient to support its award, (3) receiving a certain deposition in evidence, and (4) basing Hayes' weekly benefits upon a 45-hour workweek.

Hayes testified she was hired by Cohron to work 45 hours per week as a construction crew general laborer. During the period of her employment, April 17 through June 3, 1985, Hayes performed tasks which required her to kneel 75 percent of the time.

Sometime after Hayes began her work, she experienced pain and swelling in her knees. The condition worsened near the end of May; however, she continued working. She testified that on June 3, 1985, while she and fellow employee Richard Kenney were lifting heavy I-beams, she felt something tear in her right leg. Hayes put the I-beam down, told Kenney she had been injured, and went to locate her foreman. Hayes continued working that day, but at lighter duties.

Hayes sought medical attention from a Lincoln, Nebraska, orthopedic surgeon on the following day. This physician testified that during the first visit Hayes stated she was experiencing pain in both knees, especially in the right one, and that she had experienced this pain for "quite some time at the job she was working on." X rays showed that Hayes had abnormally tilted kneecaps on both sides. It was the physician's diagnosis that Hayes was suffering from a "tendency of the kneecap to dislocate." The physician further stated that the condition is usually present in the teenage years, but symptoms do not occur unless the afflicted person enters the type of activity Hayes had been performing.

The physician initially prescribed a drug for the pain, a knee brace, and physical therapy. Hayes was later given a release on June 18, 1985, to return to work. She then went to work loading trucks for an employer other than Cohron but, because of the pain in her right knee, had to quit after 3 days. Surgery was performed on the right knee on July 24, 1985.

Hayes had not informed the physician of the June 3 I-beam incident until September 4, 1985, after she had filed this suit. In the physician's opinion Hayes' preexisting knee condition had been aggravated, and the aggravation "could have been caused by an accident such as [the June 3 incident] or by the repetitive

kneeling and squatting that she was required to do." The physician further stated that he could not tell "which may have caused it."

Hayes' last visit to the physician occurred on October 15, 1985, at which time he felt Hayes was able to return to light work.

Cohron's first assignment of error, which attacks the finding that Hayes' injury arose out of and in the course of her employment, rests on the fact that, while the compensation court found that the injury resulted from the cumulative trauma attendant to Hayes' frequently working on her knees, Hayes had pled the injury occurred as the result of a specific, single incident, the lifting of a beam. Cohron argues that the compensation court's finding is outside the issues of the case.

Cases exist which have denied a claim for workers' compensation benefits because of a variance between the pleadings and the proof. For example, in *Cearley v. Royal Globe Ins. Co.*, 632 S.W.2d 942 (Tex. App. 1982), the plaintiff's original petition alleged that he had suffered an injury to his respiratory system by excess exposure to gases in the work environment on a specific date. The testimony at trial, however, revealed that plaintiff's breathing problems had developed over a gradual period due to repetitive exposure to the gases in the work environment. The court held that because the evidence showed a disability due to an occupational disease rather than an injury occurring on a specific date as alleged, plaintiff could not recover. However, *Cearley* is inapposite, for the jurisdiction in which it was decided, unlike Nebraska, adheres to the one specific incident "traceable to a definite time and place" theory of "accident." *Id.* at 946. *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982), makes clear that in Nebraska the definition of "accident," as used in Neb. Rev. Stat. § 48-101 (Reissue 1984), includes injuries resulting from activities which create a series of repeated traumas ultimately producing disability. See, also, *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985); *McLaughlin v. Self-Insurance Servs.*, 219 Neb. 260, 361 N.W.2d 585 (1985); *Tranmer v. Mass Merchandisers*, 218 Neb. 151, 352 N.W.2d 610 (1984); *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d

157 (1980).

Other cases have challenged compensation claims on the basis that the variance in proof violated due process by not giving the defendant adequate notice of what it was to defend against. For example, in *Moore v. Carter Carb. Div. ACF Industries*, 628 S.W.2d 936 (Mo. App. 1982), the plaintiff filed a claim alleging disability by reason of inhaling gasoline fumes. At trial, however, the medical testimony attributed the disability to either the inhalation of gasoline fumes or the inhalation of emery dust, also found at the workplace, or to both. That court noted that technical rules of pleading and strict rules of evidence were to be avoided in compensation cases and ruled that there was sufficient evidence to identify the illness sustained and the probable cause or causes thereof to support the claim as filed.

In *City of Altoona v. Workmen's Comp. App. Bd.*, 50 Pa. Commw. 178, 411 A.2d 1322 (1980), the plaintiff alleged in his petition that he had suffered a heart attack on the job. The examining physician testified, however, that although plaintiff had suffered chest pains creating the need for hospitalization, he had not suffered a heart attack but, rather, some other heart malfunction. Noting that compensation pleadings were to be liberally construed, the court held that plaintiff had suffered some disabling injury to the heart in the course of employment and thus suffered a compensable injury.

Neb. Rev. Stat. § 48-168 (Reissue 1984) provides, among other things, that the compensation court shall not be bound by any technical or formal rules of procedure. Indeed, even the rules of civil procedure applicable to the district courts provide, in Neb. Rev. Stat. § 25-846 (Reissue 1985), that no variance between the allegations in a pleading and the proof shall be deemed material unless it has actually misled the adverse party to his or her prejudice and that the court may order the pleading amended under such terms as may be just. Making those observations, *Faulhaber v. Roberts Dairy Co.*, 147 Neb. 631, 24 N.W.2d 571 (1946), approved the compensation court's allowance of a postinitial hearing amendment to the workman's petition. The injured workman alleged he had hit his thumb with a hammer. After the initial hearing, at which the workman

testified as he had alleged in his petition, he was permitted to amend the petition to allege that some molten solder got caught in a bandage at the end of his thumb, which had not previously recovered from a prior injury. The workman's testimony at the rehearing then conformed with the allegations in the amended petition. In affirming an award of benefits to the workman, the *Faulhaber* court concluded that the workman's expanded testimony, which he justified by explaining that he simply had not thought of the second accident when testifying at the initial hearing, did not discredit him as a matter of law.

While the variance between the allegation Hayes made in her petition and the testimony she produced may bear on the issue of her credibility, the variance is not such as to discredit her as a matter of law. Neither was the variance between the allegations of the petition and the proof of such a nature as to deprive Cohron of due process by failing to advise it of the issue against which it was to defend, that is, whether Hayes sustained injury in an accident arising out of and in the course of her employment with Cohron.

There being no merit to Cohron's first assignment of error, we direct our attention to its second assignment, the claim that the evidence is insufficient to support the award.

There is no question but that a workers' compensation plaintiff has the burden of proving that an injury resulted from an accident arising out of and in the course of employment. *Laffin v. Nelson Enterprize*, 222 Neb. 226, 382 N.W.2d 371 (1986). Moreover, if it is claimed that the injury was the result of employment exertion, the evidence must show that the employment contributed to the cause of the injury in some material and substantial degree. *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980). Further, the presence of a preexisting condition enhances the degree of proof required to establish that the injury arose out of and in the course of employment. *Wilson v. City of North Platte*, 221 Neb. 90, 375 N.W.2d 134 (1985).

The essence of Cohron's argument is that the physician testified only that either the frequent use of her knees or the lifting of the beam could have caused Hayes' injury and resultant disability and did not testify with reasonable medical

certainty or probability that one of those alternative causes did in fact bring about the disability.

As we have noted previously, the meaning of words used by medical experts at times presents a problem of interpretation which may be resolved by the sense in which they were used. *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986). A fair reading of the physician's entire testimony leaves no doubt but that in his opinion it was reasonably certain from a medical point of view that the preexisting abnormal tilt of Hayes' right knee was aggravated either by the lifting of the beam or the frequent use of her knees to the point that the preexisting condition produced disability. What he was uncertain of was which of the two alternative possible employment causes was responsible, because either of them could be. Since, however, as our earlier analysis of Cohron's first assignment of error demonstrates, either cause would, in and of itself, qualify as an accident arising out of and in the course of employment, that uncertainty is immaterial.

The cases Cohron cites which reach contrary results are not applicable. *Scott v. State*, 218 Neb. 195, 352 N.W.2d 890 (1984), was an occupational disease case in which the medical evidence was interpreted to mean that the employee experienced only a normal progression of his preexisting condition. In *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983), the evidence was only that the employment accident could have caused the disability, not, as in the present case, that one of two employment accidents did cause the disability. *Eliker v. D. H. Merritt & Sons*, 195 Neb. 154, 237 N.W.2d 130 (1975), does indeed hold that the failure to tie the injury and resultant disability to a specific work event fails to establish an accident which "arose in the course" of employment. It must be borne in mind, however, that *Eliker* was decided before development of the rule that in the case of an injury which develops over a period of time, the "in the course of" requirement is met by showing that employment exertion contributed in some material and substantial degree to cause the injury. See, *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982); *Crosby v. American Stores, supra*.

The second assignment of error thus fails, bringing us to

Cohron's third assignment, which claims that the compensation court erred in receiving into evidence the deposition of Hayes' coworker Kenney.

In that deposition Kenney testified that about an hour after he and Hayes had moved some I-beams, Hayes said that she could not stand it any longer, her right knee had given out. Cohron's contention is that since Kenney had failed to appear at several scheduled times to take his deposition, had not been subpoenaed to appear any of those times, and had not been subpoenaed to appear at the rehearing, it was an abuse of discretion to permit his deposition to be taken and submitted after the presentation of live testimony had been concluded. However, the compensation court's determination that it was the repeated use of her knees which caused Hayes' injury and resultant disability renders Kenney's deposition testimony irrelevant and immaterial to the disposition of this case. Thus, we need not, and therefore do not, decide the issue this assignment of error presents.

Cohron's fourth and last assignment of error argues that the compensation court erred in basing Hayes' permanent partial disability benefit upon a 45-hour workweek.

Section 48-121(4) provides in relevant part:

> For disability resulting from permanent disability, if immediately prior to the accident the rate of wages was fixed by the . . . hour, . . . the weekly wages shall be taken to be computed upon the basis of a work week of . . . a minimum of forty hours, if the wages are paid by the hour
> . . . .

Neb. Rev. Stat. § 48-126 (Reissue 1984) provides in relevant part:

> Wherever . . . the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. . . . In continuous employments, if immediately prior to the accident the rate of wages was fixed by the . . . hour . . . his weekly wages shall be taken to be his average weekly income for the period of time ordinarily constituting his week's work, and using as the basis of calculation his earnings during as

much of the preceding six months as he worked for the same employer . . . . The calculation shall also be made with reference to the average earnings for a working day of ordinary length and exclusive of earnings from overtime; *Provided*, that if the insurance company's policy of insurance provides for the collection of a premium based upon such overtime, then such overtime shall become a part of the basis of determining compensation benefits.

The evidence contradicts Hayes' stated expectation that she would work 45 hours per week. It establishes that she was paid $5.25 per hour for the first 8 hours of work per day and one and a half times that amount for work performed after the first 8 hours of work per day. The evidence also establishes that of the 7 full weeks Hayes worked for Cohron, there were only 3 weeks during which she worked 5 full days. It is clear that in each of those 3 weeks, she earned somewhat more than she would have earned by working no more than 8 hours per day, but there is no way to determine from the record how many hours she worked in any one day or how many hours she worked in any one of those 3 weeks. The record demonstrates, however, that she did not average 45, or for that matter 40, hours per week throughout her period of employment. While the record suggests that Cohron was insured, it does not reflect whether the insurer collected a premium based on Hayes' overtime work.

There is no question but that the wage rate is to be computed according to the contract of hire in force at the time of the accident. *Gruber v. Stickelman*, 149 Neb. 627, 31 N.W.2d 753 (1948); *Johnsen v. Benson Food Center*, 143 Neb. 421, 9 N.W.2d 749 (1943); § 48-126. The controlling inquiry is what that contract was. Irrespective of Hayes' stated expectation, the contract of employment was performed with a workweek of less than 40 hours. The acts of the parties and their practical interpretation of a contract while engaged in its performance before any controversy is one of the best indications of their true intent and meaning, and courts should ordinarily enforce such construction. *DeFilipps v. Skinner*, 211 Neb. 801, 320 N.W.2d 737 (1982). See, also, *Smith v. Daub*, 219 Neb. 698, 365

N.W.2d 816 (1985); *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983). If there exist facts which explain why the contract was for a workweek longer than the hours actually worked, it was incumbent upon Hayes, as the party with the burden of proof, *Laffin v. Nelson Enterprize*, 222 Neb. 226, 382 N.W.2d 371 (1986), to offer that explanation, not upon Cohron to show why evidence which appears to support its position in fact does not do so. Under the circumstances, § 48-121(4) requires that Hayes' permanent partial disability benefit be computed on the basis of a 40-hour week.

Since the record does not establish that overtime is to be considered, $5.25 is the appropriate hourly rate to be used for each of the 40 hours.

We therefore affirm but modify the award of the compensation court and remand the cause to that court with the direction that it enter an award which is consistent with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTION.

CAPORALE, J., dissenting in part.

While I agree with the majority's analysis and resolution of the wage issue, I must nonetheless dissent.

It seems to me that the fear expressed in my dissent in *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982), has come to pass by the majority's resolution of this case. Mere hard work has become an "accident . . . arising out of and in the course of . . . employment" within the meaning of Neb. Rev. Stat. § 48-101 (Reissue 1984). According to the majority, there was an accident because plaintiff used her knees in doing her work, and the accident arose out of the employment because she felt pain while she was at work. Such a thought process fleeces of any meaning the word "accident" and the phrase "arising out of."

For the reasons expressed in *Sandel v. Packaging Co. of America, supra,* I would find the plaintiff failed to sustain the burden of proving she suffered an injury resulting from an accident arising out of and in the course of her employment. I thus would reverse the judgment of the compensation court and

direct dismissal of the action.

BOSLAUGH and HASTINGS, JJ., join in this dissent.