AMBROSE HENRY HATTING, APPELLANT, V. FARMERS
COOPERATIVE ASSOCIATION, APPELLEE.

322 N.W.2d 423

Filed July 23, 1982. No. 81-696.

Scott H. Hughes and Kenneth Sacks of Perkins, Sacks, Hannan and Hughes, and Sandra Inkster, for appellant.

Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Ambrose Henry Hatting, appeals from a judgment entered on rehearing by a three-judge Workmen's Compensation Court dismissing Hatting's petition seeking recovery for an alleged accident arising out of and in the course of his employment. We affirm.

Hatting had been employed by Farmers Cooperative Association (Farmers) since approximately 1972. In 1978 Hatting was responsible for overseeing Farmers' fertilizer department. This required him to store fertilizer in various compartments within a

large warehouse building. In addition, Hatting was required to mix the fertilizer and make deliveries to customers.

On March 24, 1978, Hatting came to work at approximately 7 a.m. The previous day some coemployees had piled a rather large amount of bulk fertilizer in front of the warehouse's only large overhead door. Using a small tractor-like payloader, Hatting undertook to move the fertilizer from in front of the door to the receptacles within the warehouse where it was to be stored.

Hatting testified that he had worked for approximately 1 to $1\frac{1}{2}$ hours when he began experiencing lightheadedness, which he later believed was due to carbon monoxide fumes. Without difficulty, he dismounted from the payloader and went outside the warehouse for some fresh air. After approximately 30 to 45 minutes, Hatting returned to his job on the payloader where he continued working for approximately another hour. He testified that he again began feeling lightheaded and everything around him seemed to be occurring in slow motion. Hatting again dismounted from the payloader. He maintains that he recalls falling several times between the work area and the office area through which he had to pass. However, he does not recall striking his head at any time until he reached the doorway to the office area.

He testified that when he reached the office doorway he fell against the left side of the door frame, striking the left side of his face, and then fell on his right elbow. Hatting then was able to contact his supervisor and was taken by a friend to the office of his personal physician. His physician ordered him hospitalized. Hatting was dismissed on April 1, 1978, from the hospital. Hatting displayed no outward signs of having sustained a recent injury to his head, and no treatment for a head injury or carbon monoxide poisoning was given to him during this hospital stay.

On April 26, 1978, Hatting was rehospitalized. A visual examination of Hatting disclosed an abrasion on the right forehead near the hairline and a small hematoma on the right upper eyelid. Neither of these injuries was apparent during his earlier hospitalization. X-rays disclosed a fracture on the right frontal area of the head. Following a CAT scan, appellant's condition was diagnosed as a skull fracture of the right temporoparietal bone and an acute intracerebral hematoma with possible subdural hematoma of the left temporal lobe. A left frontotemporoparietal craniotomy was performed on April 29, 1978, and a subdural hematoma and an intracerebral hematoma on the left side were removed. Since March 24, 1978, Hatting has not engaged in any gainful employment. He thereafter filed a petition in the Nebraska Workmen's Compensation Court, claiming that the subdural hematoma and intracerebral hematoma, diagnosed for the first time following hospitalization on April 26, 1978, were caused by the accident which occurred on March 24, 1978, and arose out of and in the course of his employment with Farmers. Following a hearing, the one-judge court entered an award in favor of Hatting. On appeal to a three-judge court, the award was set aside. Specifically, the three-judge court found that Hatting had a history of head injuries and epilepsy. The court further found that the alleged accident on March 24, 1978, produced no evidence of any skull injury, but, rather, that when Hatting was admitted to the hospital on April 26, 1978, he advised the hospital staff he had been in a fight. Hatting's treating physician was unable to state with a degree of medical certainty that the injury for which he received treatment on April 29, 1978, was caused by a fall on March 24, 1978. It was the three-judge court's opinion that Hatting had simply failed to sustain his burden of proving that the injury for which he was treated on April 29, 1978, and which has resulted in

his disability, was related to the accident which he allegedly sustained on March 24, 1978.

As we begin our examination of this appeal, we are compelled to keep in mind several basic principles regarding a review of a decision entered by a three-judge Workmen's Compensation Court. Neb. Rev. Stat. § 48-185 (Reissue 1978) specifically provides: "The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case." Moreover, in *Kudera v. Minnesota Mining & Manuf. Co.,* 201 Neb. 235, 238, 266 N.W.2d 915, 917 (1978), we said: "This court is not free in workmen's compensation cases to weigh the facts anew. Our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong." And in *Hyatt v. Kay Windsor, Inc.,* 198 Neb. 580, 584, 254 N.W.2d 92, 95 (1977), we said: "In testing the sufficiency of evidence to support findings of fact made by the Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor, and he should have the benefit of every inference that can reasonably be drawn therefrom."

An examination of the record in this case leaves no doubt that there was indeed a bona fide dispute with regard to the facts and the cause of Hatting's injury. When Hatting first appeared at the hospital on March 24, 1978, he revealed no evidence of any recent injury to his skull. It was not until he reappeared at the hospital on April 26, 1978, that there were any visible signs of injury. The explanation given for the injury observable on April 26, 1978, and further supported by X-rays and a CAT scan, is a statement in the medical records, apparently given by Hatting to the attending physician, that he was in a fight.

Hatting now argues that the compensation court should have disregarded the evidence contained in the medical record because it is not reliable. He further argues that the testimony of the expert presented by Farmers, a neurosurgeon who examined Hatting at the request of Farmers, should be disregarded. In essence, Hatting argues that the facts of the case entitled him to an award as a matter of law. While we are inclined to agree with Hatting that the testimony presented by the expert for Farmers was discredited and probably should be disregarded, we are unable to nevertheless reach the conclusion urged upon us by Hatting. The reason that we are unable to do so is due to the fact that the employer has no burden to prove that the injury was *not* caused by the accident but, rather, that the employee must prove that the injury *was* caused by an accident arising out of and in the course of his employment. See, *James v. Rainchief Constr. Co.,* 197 Neb. 818, 251 N.W.2d 367 (1977); *Inserra v. Village Inn Pancake House,* 197 Neb. 168, 247 N.W.2d 625 (1976). In the instant case, a reading of the record discloses that Hatting's treating physician and trial expert, a neurosurgeon, was unable to testify with a reasonable degree of medical certainty that the injury suffered by Hatting on April 26, 1978, arose out of and in the course of Hatting's employment and was related to the alleged fall which occurred on March 24, 1978. The most that Hatting's treating physician would say is that the March 24, 1978, accident could have caused the hematoma which was surgically removed. He testified that it was medically "possible" that a blow to Hatting's head on March 24, 1978, could cause the hematoma which was later found and was operated upon on April 29, 1978. That an injury could have possibly been caused by an employment accident is not sufficient to meet the burden imposed upon an employee in order to recover under our Workmen's Compensation Act. In *Cam-*

*arillo v. Iowa Beef Processors, Inc.,* 201 Neb. 238, 266 N.W.2d 917 (1978), we held that medical testimony that an employee's injury was "possibly" a combination of the employee's congenital condition and an accident was not sufficient. In doing so we said at 243, 266 N.W.2d at 919: "The evidence in this case on behalf of the plaintiff does not even meet the standard of 'probability' in Welke v. City of Ainsworth, *supra.* An award for permanent disability cannot be based on mere possibilities."

And, recently, in *Husted v. Peter Kiewit & Sons Constr. Co.,* 210 Neb. 109, 313 N.W.2d 248 (1981), we held that a workmen's compensation award cannot be based upon possibility or speculation. The fact that Hatting's alleged accident may possibly have been the cause of his condition is not sufficient for him to sustain his burden of proof under Nebraska workmen's compensation laws. We cannot agree with appellant that he was entitled to judgment as a matter of law under the evidence in this case. The most that we can say is that there was presented a bona fide question of fact concerning how the injury occurred, which the compensation court was required to resolve. We reach that conclusion even disregarding the testimony of the expert provided by Farmers. As we observed in *Erving v. Tri-Con Industries,* 210 Neb. 339, 344, 314 N.W.2d 253, 256 (1982): "The testimony of all the witnesses at best produced a conflict which the compensation court as the trier of fact had to resolve." And, as we have already noted, once the trier of fact resolves those questions of fact, on appeal we are required to leave those findings untouched unless we can say they are clearly wrong as a matter of law. We are simply unable to do so in this case. For that reason, the judgment of the compensation court is affirmed.

AFFIRMED.