STEVEN EDWARD DOTY, APPELLEE, v. AETNA LIFE & CASUALTY, APPELLANT.

350 N.W.2d 7

Filed May 25, 1984. No. 83-487.

Dennis R. Riekenberg of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

John B. Ashford of Dowd, Fahey & Ashford, and Radley Clemens, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Appellant, Aetna Life & Casualty, the workmen's compensation insurance carrier for Mobile City Sales, appeals from the decision of a three-judge panel of the Workmen's Compensation Court affirming a single judge's finding that appellee, Steven Edward Doty, suffered a temporary total disability resulting from an accident on October 8, 1980. We affirm the judgment of the three-judge panel.

The evidence reveals that on October 8, 1980, Doty was employed by appellant's insured, Mobile City Sales, in Fremont, Nebraska. While Doty was unhooking a mobile home from a truck by cranking a tongue jack, something "popped" in his lower back. Doty had no prior history of back problems, and was treated with traction at Memorial Hospital in Fremont by Drs. Bridges and Smith.

In late October 1980 he returned to work, with the medical restrictions not to bend and not to lift anything heavy. In March 1981 Doty was referred to Dr. Frederick Hathaway. Doty's back pain persisted between October 1980 and July 28, 1981, when he was admitted to Lincoln General Hospital for additional conservative treatment of therapy and traction.

Office visits were conducted August 4 and September 1, 1981. Doty was given a release by Dr. Hathaway to return to work and resume his employment on September 8, 1981. At this time coworkers did his heavy lifting for him. On May 13, 1982, Doty was readmitted to Lincoln General due to continued back pain. A lumbar myelogram was conducted, and laminectomy surgery was performed May 20, 1982, at the L4-5 level. Following a period of convalescence, Doty was allowed to return to work August 2, 1982, with instructions not to lift over 20 to 40 pounds.

On September 2, 1982, at his residence, Doty experienced an episode of severe pain when he bent over to kiss his 2-year-old daughter. At the rehearing Doty testified he did not attempt to lift her off the ground at the time of this incident but that the child "was on the floor at first and I stood her up . . . and then I bent over to give her a kiss." Doty was sitting on the edge of a chair at this time. Earlier statements of Doty to his doctors indicated that he had lifted his 20- to 25-pound child at the time.

Dr. Hathaway hospitalized Doty for traction on September 3, 1982. Upon Dr. Hathaway's request Dr. Sposato, a neurologist, examined Doty on September 10. Drs. Hathaway and Sposato concluded that Doty "had a recurrent nerve injury, probably secondary to an irritation from scar tissue around the area of the previous injury [the October 1980 injury, followed by the laminectomy of May 20, 1982]." In answer to the question, "And would that be in the L-4, L-5 area?" Dr. Hathaway responded, "Yes." Dr. Hathaway further testified:

> Q. Prior to or during the time that he was hospitalized or prior thereto in September, had you theorized that there possibly could be injury to L-3, L-4 level as well?
>
> A. That was the impression we had when we put him in the hospital, but it subsequently wasn't borned [sic] out by further examination and tests.

Appellant's defense is based on the review of all of Doty's medical files made by Dr. Joseph Gross, a doctor called by appellant. Dr. Gross did not examine or see Doty. Dr. Gross concluded that in September of 1982 Doty had suffered a new injury at the L3-4 level and that Doty's problems in September of 1982 stemmed from that new injury. Appellant contends from this record examination that the child-lifting or child-kissing incident was an intervening cause between Doty's injury in October 1980 and his condition in late September 1982.

Appellant stopped paying workmen's compensation benefits on October 28, 1982. Between October 1982 and April 1983, Doty was seen on 10 occasions by Dr. Hathaway. Prompted by increasing financial difficulties, Doty sought a medical release to return to work, despite experiencing continued pain in his back. Dr. Hathaway signed the release April 18, 1983. Doty was required to wear a back brace while working. Doty had done "little odds and ends jobs," earning approximately $250 the month before the hearing. The parties stipulated Doty's average weekly wage before his back problems was $250.

In reviewing findings of fact in workmen's compensation cases, this court is not free to weigh the facts anew. The findings of the compensation court have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Ceco Corp. v. Crocker*, 216 Neb. 692, 345 N.W.2d 20 (1984); *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). In testing the sufficiency of evidence to support an award after rehearing, the evidence must be considered in the light most favorable to the successful party. *Ceco Corp. v. Crocker, supra; Hatting v. Farmers Co-op Assn.*, 212 Neb. 242, 322 N.W.2d 423 (1982).

This court has adopted the rule that where there have been two accidents to an employee, sustained while the employee was working for two different employers, the question of whether the disability

sustained by the employee should be attributed to the first accident or to the second accident depends on whether the disability sustained was caused by a recurrence of the original injury or by an independent intervening cause. *Snowardt v. City of Kimball*, 174 Neb. 294, 117 N.W.2d 543 (1962); *Breed v. Interstate Glass Co.*, 188 Neb. 284, 196 N.W.2d 169 (1972).

The burden of proof is upon the claimant to establish by a preponderance of the evidence that the injury was sustained in an accident arising out of and in the course of his employment. *Van Winkle v. Electric Hose & Rubber Co.*, 214 Neb. 8, 332 N.W.2d 209 (1983). In the present case there is no dispute in regard to the original injury of October 8, 1980, and appellee received compensation payments following that incident. The important question posed for consideration is whether the September 2, 1982, incident constituted a noncompensable independent intervening cause, or whether it was a natural consequence flowing from the compensable accident of October 8, 1980.

We find this issue has been addressed in 1 A. Larson, The Law of Workmen's Compensation § 13.00 (1982), where it is stated at 3-348:

When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

Professor Larson continues further in § 13.11 at 3-352 to -353:

Moreover, once the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. This may sound self-evident, but in close cases it is

sometimes easy to overlook this essentially simple principle. In a Utah case, claimant had suffered a compensable accident in 1966, injuring his back. Several years later, this condition was triggered by a sneeze into a disc herniation, for which claimant required surgery. The medical testimony was that because of the back condition, it was probable that had claimant not had the sneezing episode, some other major or minor event would have eventually necessitated surgery. The finding that the sneezing episode was the independent cause of claimant's disability, and the resultant denial of compensation, were held to be error, and benefits were awarded on appeal. This result is clearly correct. The presence of the sneezing incident should not obscure the true nature of the case, which is nothing more than that of a further medical complication flowing from a compensable injury. If the herniation had occurred while claimant was asleep in bed, his characterization as a mere sequel to the compensable injury would have seemed obvious. This case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances. A different question is presented, of course, when the triggering activity is itself rash in the light of claimant's knowledge of his condition.

We find this analysis applicable in the present case. Doty was admittedly injured on the job in October of 1980. His life after that was one of pain resulting from this incident. Admittedly, there is a dispute in the medical testimony as to the result of the child incident, but that dispute has been resolved by the compensation court in Doty's favor.

The present case is factually similar to *Medart Div. of Jackes-Evans Mfg. v. Adams*, 344 So. 2d 141 (Miss. 1977). In that case a claimant injured her lower back while lifting at work. A few months later surgery was performed, and she continued to have soreness. Three and a half months after surgery she experienced severe pain while picking up clothes from a laundry basket at home. The Mississippi Supreme Court relied on Professor Larson's analysis in determining that the act of bending over to pick up clothes was simply a triggering episode and that claimant's act in performing this simple task was not unreasonable under the circumstances.

We find the same to be true in the present case. Following the 1980 injury, appellee experienced continuous pain and received an abundance of medical treatment, including surgery. There is sufficient evidence from which the compensation court could determine that the injury received while bending over to kiss the child was not an independent intervening cause but, in fact, a recurrence of the original injury.

Appellant also contends that Doty was fully recovered before the 1982 injury, as evidenced by his return to work in August of that year. Appellant cites *Oertel v. John D. Streett & Company*, 285 S.W.2d 87 (Mo. App. 1955), as controlling authority for such a situation. In *Oertel* the claimant injured his back in a lifting incident, received medical treatment, and returned to work wearing a belt prescribed by his physician. Approximately 2 months after the injury, claimant accepted a better paying job with a new employer. Claimant attended a family reunion 2 months later and sustained pain in his back while fielding a "grounder" during a softball game.

A denial of benefits by Oertel's former employer was sustained by the court on the basis that the softball injury was an independent and intervening cause. The court found claimant had returned to his normal work activities after the initial injury to his

back. Claimant testified he participated in heavy lifting and discarded his belt after gaining new employment. The medical evidence supported the court's finding in that case.

Appellee's situation is distinguishable from *Oertel* in that Doty did no heavy lifting after the initial injury. The evidence also clearly shows appellee never fully recovered, having continued to experience pain and receive medical treatment from the date of the admittedly compensable accident through September of 1982.

Where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the compensation court. *Ceco Corp. v. Crocker*, 216 Neb. 692, 345 N.W.2d 20 (1984). The record contains sufficient competent evidence to allow the compensation court to accept one opinion over another. The findings of the Workmen's Compensation Court on rehearing are not clearly wrong and are hereby affirmed.

Appellee is awarded an attorney fee of $750 for the services of his attorneys in this court.

AFFIRMED.