PAMELA TRANMER, APPELLEE, V. MASS MERCHANDISERS, APPELLANT.

352 N.W.2d 610

Filed July 27, 1984.   No. 84-009.

Jewell, Otte, Gatz & Collins, for appellant.

LeRoy J. Sturgeon of Smith & Smith, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

The appellant, Mass Merchandisers, appeals from a judgment entered by a three-judge panel of the Nebraska Workmen's Compensation Court, which entered an award in favor of the appellee, Pamela Tranmer, and against her employer, Mass Merchandisers. For reasons set out in this opinion, we believe that the three-judge panel was correct and, therefore, affirm the judgment.

In doing so we must keep in mind that the findings of fact made by the Nebraska Workmen's Compensation Court on rehearing have the same force and effect as a jury verdict in a civil case and will not be reversed or set aside unless there is insufficient evidence in the record to warrant the award. See, Neb. Rev. Stat. § 48-185 (Reissue 1978); *Heironymus v. Jacobsen Transfer*, 215 Neb. 209, 337 N.W.2d 769 (1983); *Halbert v. Champion International*, 215 Neb. 200, 337 N.W.2d 764 (1983). Furthermore, we must keep in mind that in testing the sufficiency of the evidence, every controverted fact must be resolved in favor of the successful party, and the successful party is given the benefit of every inference that can be drawn from the evidence. *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981); *McCann v. Holy Sepulchre Cemetery Assn.*, 205 Neb. 444, 288 N.W.2d 45 (1980). There is no real dispute as to the principles of law applicable in this case, but, rather, a dispute as to the meaning of the evidence, which the compensation court resolved in favor of Mrs. Tranmer.

Mrs. Tranmer was, at the time of the accident involved in this case, employed as a factory line person by Mass Merchandisers. She had initially been employed in March of 1979, and she worked until November 15, 1980, when she sustained an injury. Her work consisted of placing and securing lids on filled baskets of merchandise as the baskets moved along a conveyor belt, and then lifting these baskets onto another conveyor belt.

During the course of a workday, she processed four or five baskets a minute.

The record reflects that Mrs. Tranmer had no prior employment nor other positions at Mass Merchandisers which required the use of her hands or arms. Furthermore, she had no prior accidents or hand or wrist problems before the accident on November 15, 1980. On that date, while working, she suddenly felt pain in both wrists and her wrists began to swell simultaneously. After reporting her condition to her supervisor, she was sent to a doctor the following day.

Two weeks later, still experiencing difficulty, Mrs. Tranmer went to a family practitioner, who, after a physical examination and X-rays, referred her to an orthopedic surgeon.

Sometime in January or early February of 1981, the orthopedic surgeon, Dr. Wheeler, to whom she had been referred by the family practitioner, examined her. He performed various tests, including taking X-rays and an electrical nerve conductor test. Following a review of these tests, he diagnosed her condition as carpal tunnel syndrome, and in April 1981 he performed surgery on her left wrist. In June of 1981 he performed similar surgery on her right wrist. After postoperative examinations, Dr. Wheeler released Mrs. Tranmer to return to work in August of 1981. However, by that time the factory operation had been closed down. Mrs. Tranmer continued to suffer discomfort in her hands. She has not worked since November 15, 1980, when she suffered her initial accident.

In February of 1982 she returned to Dr. Wheeler, with continued complaints of pain, weakness, and swelling. The evidence is clear that she suffered no injury between the surgery performed by Dr. Wheeler in 1981 and when she returned to see Dr. Wheeler in February of 1982. Dr. Wheeler performed another electrical nerve test and injected cortisone; and when, in the spring of 1983, the treatments given by Dr. Wheeler were ineffective to eliminate the discomfort, he sent her to Dr. Linscheid at the Mayo Clinic in Rochester, Minnesota. Dr. Linscheid examined Mrs. Tranmer and advised her that she probably had what he described as bilateral pronator syndrome, and might have a double crush syndrome. He recommended surgery in both forearms. On June 10, 1983, he performed surgery on her

left arm at the Mayo Clinic.

Mrs. Tranmer testified that since the surgery in June of 1983, there has been no improvement and that she was scheduled to return to the Mayo Clinic in October of 1983 for followup consultation. She testified that she was taking no medication and that she was suffering from pain and swelling which made it difficult to perform normal housework without discomfort. Furthermore, she testified that she was unable to sleep through the night without being awakened by tingling in her hands, that her hands fell asleep during the day, and that while she was able to drive, the pain increased when she did so.

In April of 1983 Mass Merchandisers sent Mrs. Tranmer to a Dr. Isgreen for examination. He reviewed her medical history, performed a clinical neurological examination, and ordered an electrical conductor test—an EMG—and other laboratory tests.

It was stipulated by the parties that Mass Merchandisers has paid all the expenses of medical care and treatment and temporary disability compensation benefits from the date of the accident on November 15, 1980, until August of 1981. It was further agreed, however, that since August of 1981, no expenses or benefits have been paid, including the expenses of the trips to Rochester and the surgery performed there.

In essence, Mass Merchandisers maintains that the award entered by the three-judge panel was in error because there is not sufficient reliable evidence to connect the injury of November 15, 1980, with Mrs. Tranmer's current condition, nor is there sufficient evidence to establish that the treatment received by Mrs. Tranmer and the expenses incurred in connection therewith after August of 1981 are related to the injury of November 15, 1980.

We believe that while the evidence is not as abundant as one would hope, it is, nevertheless, sufficient to support the judgment of the compensation court. Mass Merchandisers' doctor provided the only medical testimony offered at the hearing before the three-judge panel. Dr. Isgreen, by deposition, testified with respect to his objective clinical findings and indicated that as of April 1983 Mrs. Tranmer continued to suffer from carpal tunnel syndrome. He further testified that his history and phys-

ical examination of Mrs. Tranmer revealed that she was still bothered significantly by swelling, numbness, and weakness in her hands, wrists, and forearms, which would become worse with any sort of prolonged activity, and, therefore, she was virtually able to do very little. Dr. Isgreen testified specifically that a review of the electrical tests of the nerves and muscles of Mrs. Tranmer's hand indicated that "indeed both carpal tunnels — or both median nerves are affected. The left side is worse than the right side, and the electromyographer felt that this was due to compression or irritation or inflammation of the median nerve at the wrist." His diagnosis was bilateral carpal tunnel syndrome. Thus, the EMG confirmed the objective finding that carpal tunnel syndrome continued to exist after the surgery performed by Dr. Wheeler. When asked if the Mayo Clinic's diagnosis of pronator syndrome was the same as the earlier diagnosis rendered by Dr. Wheeler, Dr. Isgreen said, "[I]t's kind of the same thing." Dr. Isgreen testified that while one normally would expect that the condition experienced by Mrs. Tranmer on November 15, 1980, would not result in permanent disability, in her case the electrical nerve conductor test seemed to support her contention that she was experiencing continued abnormality.

There is no evidence to indicate any break in the chain of events. The parties stipulated and agreed that Mrs. Tranmer suffered a compensable injury in November of 1980, and Mass Merchandisers' expert witness conceded that when he examined Mrs. Tranmer, she in fact did continue to have difficulty of the type similar to that resulting from the injury in November of 1980. Moreover, he testified that one of the alternatives for the condition experienced by Mrs. Tranmer was surgery of the type ultimately performed at the Mayo Clinic, but for which Mass Merchandisers refused to make payment. Apparently, it is the view of Mass Merchandisers that an employee must regularly, frequently, and periodically continue to be examined by a physician so as to establish that each continued week of disability is related to the initial injury. We do not believe this to be the law. Nor do we believe that we can say as a matter of law that the three-judge panel was in error when it concluded that because Mrs. Tranmer admittedly suffered a compensable injury in No-

vember of 1980 and appeared to continue to suffer from that injury without any other intervening cause, she was still entitled to medical treatment and compensation. While Dr. Isgreen testified that Mrs. Tranmer's condition was unusual, he did not at any time indicate that it was nonexistent or that she was not in fact experiencing the pain or disability which she claimed.

In view of the limitations imposed upon this court regarding the review of the actions taken by a three-judge panel of the Nebraska Workmen's Compensation Court, we believe that the evidence was sufficient to support the award made by the court on December 5, 1983, and, therefore, we are compelled to affirm the award in all respects.

AFFIRMED.