THOMAS E. MCLAUGHLIN, APPELLEE, V. SELF-INSURANCE SERVICES AND SWIFT & COMPANY, APPELLANTS.

361 N.W.2d 585

Filed February 8, 1985.   No. 84-454.

Richard M. Dustin of Gaines, Otis, Haggart, Mullen & Carta, for appellants.

Thomas F. Dowd of Dowd, Fahey, Dinsmore & Hoffman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.
The defendant employer, Swift & Company, Omaha, Nebraska, and Self-Insurance Services, Shawnee Mission, Kansas, appeal from an award on rehearing of the Nebraska Workmen's Compensation Court, which found that the plaintiff employee, Thomas E. McLaughlin, suffered injuries to his right elbow, right wrist, and right middle finger as the result of an accident arising out of and in the course of his employment, and granted him 20 $3/7$ weeks of temporary total disability compensation. Swift and Self-Insurance claim McLaughlin failed to sustain his burden of proving either that he was involved in an accident or that his injuries were the result of the event he describes. We affirm.

McLaughlin, 28 years of age, had been employed by Swift for some 9 years. During all of this time he operated an 850 Whizard knife, that is, a knife powered by a $1/3$-horsepower

motor which is attached to a cable suspended from the ceiling of the work area. The knife is used to trim fat off hams. One of the purposes of the motor seems to be to rotate and vibrate the knife. There was evidence that the Whizard knife produced minimal vibration and minimal torque.

According to McLaughlin, as soon as he activated the knife on May 25, 1983, he realized that it had a bad cable, causing the knife to exert unusual stress and pressure. He reported this fact to his foreman, but he was told to continue with his work. After awhile, McLaughlin felt and heard something snap in his right elbow. He thereupon began to develop a soreness in his arm, and the two smaller fingers of his right hand began to go numb. He continued to use the knife a while longer, and then reported the matter to Swift's nurse. During the approximately $2^{1}/_{2}$ hours that McLaughlin used the Whizard knife on May 25, 1983, he processed between 1,000 and 1,250 hams, requiring approximately 10 arm movements per ham. McLaughlin's elbow and finger symptoms continued, and he consulted a physician about them on June 3, 1983. On August 23, 1983, McLaughlin began to complain of a clicking sound and sensation in the middle finger of his right hand. The physician diagnosed an ulnar neuritis of the right elbow, that is, an inflammation with resultant tenderness of the ulnar nerve at the right elbow; a carpal tunnel syndrome of the right wrist, that is, an involvement with attendant pain of the median nerve at its wrist passage; and a stenosing tenosynovitis of the middle finger of the right hand, that is, a scarring in the sheath through which the tendon passes. The physician treated all these symptoms conservatively, but advised McLaughlin that if the symptoms in the fingers did not improve, consideration would have to be given to surgery. The surgery would move the ulnar nerve from its normal position under the medial epicondyle to a position over that bone. McLaughlin last saw his physician on October 18, 1983, and was released to return to work on October 24.

The same physician and others in his office had treated McLaughlin previously because of pain in the right shoulder and arm on November 24, 1981, at which time the conditions were diagnosed as a cervical problem and a carpal tunnel

syndrome of the right wrist. While a child, McLaughlin also suffered a fracture of the right medial epicondyle, which resulted in a nonunion but which did not produce upper extremity symptoms until June of 1983. Inasmuch as the symptoms in 1983 were different from those manifested in 1981, the physician was of the opinion that the conditions for which McLaughlin was treated in 1981 were not the same conditions for which he was treated in 1983.

After being asked to assume that McLaughlin's employment with Swift required "repetitive use of [McLaughlin's] right arm and hand," the physician testified, based on reasonable medical certainty, that although he did not know precisely what happened to McLaughlin while at work on May 25, 1983, the elbow, wrist, and finger conditions for which he treated McLaughlin in 1983 were related to the repetitive use of his right hand and arm required by his employment.

A majority of the three-judge Workmen's Compensation Court panel concluded that McLaughlin's 1983 injury "is a product of an accident in the nature of repetitive trauma but not that it necessarily resulted from the vibration of the defective cable on the wizard [sic] knife."

We are committed to a standard of review which accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case; the findings will not be set aside where they are supported by the evidence and are not clearly wrong. In short, we do not reweigh the facts on appeal. *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984); *Doggett v. Brunswick Corp.*, 217 Neb. 166, 347 N.W.2d 877 (1984). Further, in testing the sufficiency of the evidence, the successful party is entitled to have every controverted fact resolved in his favor and to receive the benefit of every inference which can be drawn from the evidence. *Tranmer v. Mass Merchandisers*, 218 Neb. 151, 352 N.W.2d 610 (1984); *Doty v. Aetna Life & Casualty*, 217 Neb. 428, 350 N.W.2d 7 (1984).

With those standards firmly in mind we now turn our attention to the first assignment of error, which questions the sufficiency of the evidence to establish an accidental injury.

Neb. Rev. Stat. § 48-151(2) (Reissue 1984) defines an

accident as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury."

There is no question but that there were produced, on May 25 and August 23, 1983, objective symptoms. We have said that the "unexpected or unforeseen" requirement is satisfied if either the cause was of an accidental character or the effect was unexpected or unforeseen. *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). *Sandel* held that a "tennis elbow" resulting from nothing more than the repeated arm and hand movements satisfied the unexpected or unforeseen requirement of an accident. The movements involved picking up, turning, and placing three pieces of corrugated cardboard 80 by 97 inches, 300 times per work shift, into a "slitter-scorer" machine. *Sandel* further ruled that the "suddenly and violently" element meant not "instantaneously and with force" but, rather, an injury which occurs "at an identifiable point in time requiring the employee to discontinue employment and seek medical treatment." *Id*. at 158, 317 N.W.2d at 916. In *Tranmer v. Mass Merchandisers, supra*, this court affirmed an award of compensation based on bilateral carpal tunnel syndromes caused by the placing of and securing of lids on filled baskets of merchandise and then lifting the baskets from one conveyor belt to another.

Consequently, it cannot be said the compensation court was clearly wrong in finding that McLaughlin had met his burden of proving an accidental occurrence. Obviously, if a 2¹/₂-hour period required between 10,000 and 12,500 arm movements, 9 years of such employment activity required an astronomical number of like movements. Neither was the compensation court clearly wrong in choosing to accept the physician's reasonably certain medical opinion that the injuries were "related" to the repeated arm movements required by McLaughlin's employment.

The award of the compensation court being supported by findings of fact which are not clearly wrong, it is affirmed. Pursuant to the provisions of Neb. Rev. Stat. § 48-125 (Reissue 1984), McLaughlin is allowed an attorney fee of $500 to be taxed as costs for the services of his attorney in this court. *Smith*

*v. Fremont Contract Carriers, supra.*

AFFIRMED.

CAPORALE, J., dissenting.

I agree that this case is controlled by *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982), and its subsequent *sub silentio* application in *Tranmer v. Mass Merchandisers*, 218 Neb. 151, 352 N.W.2d 610 (1984). However, I thought at the time that *Sandel* was wrongly decided and continue to so think. Accordingly, I dissent in this case for the same reasons I dissented in *Sandel*.

BOSLAUGH and HASTINGS, JJ., join in this dissent.